IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 21-cv-00885-CMA-SKC

TODD ROMERO,

    Plaintiff,

v.

ALTITUDE SPORTS & ENTERTAINMENT, LLC, and
KROENKE SPORTS & ENTERTAINMENT, LLC,

    Defendants.

---

## ORDER DENYING MOTIONS *IN LIMINE*

---

This matter is before the Court on both parties' motions *in limine*. *See generally* (Docs. ## 140 (Defendants' motion), 142 (Plaintiff's motion)); *see also* (Docs. ## 145, 146 (responses)). For the following reasons, both motions are DENIED.

### I.    BACKGROUND

The Court recently provided the facts of this case in considerable detail and declines to do so again. *See generally* (Doc. # 129.) In short, this employment discrimination case arises between a sportscaster and regional sports broadcasting network. Plaintiff Todd Romero alleges that Defendants Altitude Sports & Entertainment, LLC and its parent corporation, Kroenke Sports & Entertainment, LLC (collectively "Altitude"), discriminated against him because he is Hispanic, older than 40, and allegedly has a disability due to a substance use disorder that he claims to have

addressed with rehabilitation programs. He claims that his complaints of discrimination motivated Altitude to retaliate against him, and he also claims that Altitude owes him a $5,000 bonus that was promised to him but never paid. *See id.* at 1–2. As evidence of discrimination and retaliation, Mr. Romero refers to numerous Altitude decisions including the network choosing to let his contractual employment protections lapse, slowly replace his high-profile sportscasting role with less prestigious work writing features and other miscellaneous assignments, forbidding him from using the network's recording studio, and ultimately firing him. *E.g.*, (Doc. # 145 at 6–8.) Consequently, Mr. Romero initiated this lawsuit, bringing one claim for breach of contract along with discrimination and retaliation claims under Title VII, Section 1981, the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA"). *Id.* at 9 (citations omitted). The matter is set for trial beginning March 11, 2024. *See* (Doc. # 143.)

On February 23, 2024, the parties both filed motions *in limine* seeking the exclusion of evidence. Mr. Romero seeks to exclude evidence of (1) his inappropriate and lewd behavior towards female coworkers[1] and (2) his drug test results and records from substance abuse treatment facilities. (Doc. # 142 at 1.) Altitude, on the other hand, asks this Court to exclude all evidence beyond the scope of the disputed issues of material fact listed by the Court in its previous order on Altitude's motion for summary

---

[1] Specifically, Mr. Romero seeks to preclude testimony on that topic from the following witnesses: Ms. Michele Sturgell, Ms. Katy Winge, Mr. Kenny Miller, Ms. Erin Slack, Ms. Jenny Siegle, and Ms. Lauren Jbara, along with "any other witness Defendants intend to call at trial to testify regarding" that behavior. (Doc. # 142 at 3.)

judgment. (Doc. # 140 at 1–2); see (Doc. # 129 at 18). Both parties invoke Rules 401 and 403 of the Federal Rules of Evidence as the bases for their motions *in limine*.

## II.     STANDARD OF REVIEW

"A creature of neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence, the motion *in limine* gives the court the opportunity to take up before trial those certain and limited evidentiary issues in order to minimize interruptions at trial." *Deghand v. Wal-Mart Stores, Inc.*, 980 F. Supp. 1176, 1179 (D. Kan. 1997). Pretrial rulings may save time at trial and save the parties time, effort, and cost in preparing their cases. *Id.* However, in many cases, such rulings are better left until trial when the Court can assess the question considering the evidence presented at trial. *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1387–88 (D. Kan. 1998).

The moving party "has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, No. 17-cv-01595-CMA-NRN, 2020 WL 1452166, at *3 (D. Colo. Mar. 25, 2020) (quoting *First Sav. Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1082 (D. Kan. 2000)). Denial of a motion *in limine*, however, does not mean that all of the evidence contemplated by the motion will automatically be admitted at trial. *Id.* Rather, "the court may alter its limine ruling based on developments at trial or on its sound judicial discretion." *Id.* (quoting *First Sav. Bank*, 117 F. Supp. 2d at 1082). Further, a ruling *in limine* does not "relieve a party from the responsibility of making objections, raising motions to strike, or making formal offers of proof during the course of trial." *Thweatt v. Ontko*, 814 F.2d 1466, 1470 (10th Cir. 1987).

3

### III. APPLICABLE LAW

#### A. Rule 401

Evidence is relevant if: it has "any tendency to make a fact more or less probable" and said fact is material, *i.e.*, the fact "is of consequence in determining the action." Fed. R. Evid. 401. The Court has broad discretion over evidentiary relevance determinations. *E.g.*, *United States v. Neal*, 718 F.2d 1505, 1509–10 (10th Cir. 1983).

#### B. Rule 403

Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. As with Rule 401 determinations, the Court has broad discretion to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Neal*, 718 F.2d at 1510.

### IV. ANALYSIS

As explained below, the Court concludes that both parties have satisfied their respective burdens of showing that the evidence in dispute is relevant and more probative than prejudicial. Neither of the parties' corresponding arguments to the contrary persuade the Court otherwise.

#### A. Defendants' Motion *in Limine*

Altitude essentially argues that the Court's recent order on summary judgment in this case narrowed the scope of the outstanding factual issues pertaining to Mr. Romero's discrimination and retaliation claims. *See* (Doc. # 140 at 3–5.) According to

4

Altitude, the Court's order on summary judgment makes irrelevant any evidence not pertaining to the five bullet-pointed disputed material facts provided in the order:

- Altitude's reasons for indefinitely suspending "the 24/7 shows," a series that Mr. Romero was producing;

- Altitude's reasons for denying Mr. Romero a main-host role on another segment, "Sports Social";

- Altitude's decision to transition Mr. Romero's workload from mostly hosting assignments to less prestigious work;

- Mr. Romero's ability to use Altitude's recording studio; and

- the alleged $5,000 bonus.

Altitude insists that admitting evidence concerning facts beyond the quintuplet listed above would create a confusing series of "mini-trials" that would unfairly prejudice Altitude and confuse the jury. *Id.* In response, Mr. Romero insists that Altitude's interpretation is nonsensical because the Court would have expressly stated that its bullet-pointed list of disputed material facts was strictly inclusive. (Doc. # 145 at 4.)

Altitude's reading of this Court's order is incorrect. The Court cited outstanding factual disputes that exemplified why summary judgment was inappropriate. If the Court intended to limit the scope of the issues going forward based on that list, the opinion would have said so explicitly. It did not. Consequently, the Court DENIES Altitude's motion *in limine*.

**B.  Plaintiff's Motion *in Limine***

      1.  <u>Evidence of Mr. Romero's Lewdness Towards Female Coworkers</u>

5

In his motion, Mr. Romero argues that any evidence documenting his inappropriate behavior towards female colleagues is irrelevant because, with the exception of one incident reported in 2012, Altitude had no knowledge of that conduct when Altitude chose to take adverse employment action against him. (Doc. # 142 at 2–3.)

Altitude responds with citations to official records and references to informal complaints that show the network's awareness of at least some of Mr. Romero's conduct before making the employment decisions about which he now complains. (Doc. # 146 at 3–5.) Also, because Mr. Romero challenges employment decisions made by Altitude after Mr. Romero filed this lawsuit, the facts that Altitude learned from the lawsuit are relevant to the network's motivations for the actions challenged in Mr. Romero's supplemental complaint. *Id.* at 5 (citing (Doc. # 66)).

The Court agrees with Altitude. The evidence is relevant to Altitude's motivations underlying the employment decisions affecting Mr. Romero. The issue becomes one of conditional relevance—Altitude must know of Mr. Romero's conduct for it to have affected Altitude's motivations. To prove that point, Altitude points to a 2012 email received by Altitude employees that recites five separate instances of Mr. Romero's inappropriate behavior towards women. (Doc. # 142-5.) Altitude also refers to an alleged conversation between Ms. Winge and her supervisor, Ken Miller, discussing why Mr. Romero's history of comments about her physical appearance led her to verbally threaten him should he do so again. (Doc. # 142 at 3–4.) Thus, because "the relevance of [this] evidence depends on whether a fact exists"—that fact being whether

Altitude knew of Mr. Romero's conduct at a time when it could have impacted Altitude's deliberative process—and Altitude has sufficiently shown that the fact exists, the Court deems it relevant. Fed. R. Evid. 104(b). Further, the Court finds this evidence is more probative than prejudicial, especially given that Mr. Romero was either unable or unwilling to articulate why said evidence will be, as he claims, unfairly prejudicial, confusing, misleading, or cumulative. *See* (Doc. # 142 at 5); *but see, e.g.*, *Pinon Sun Cond. Ass'n*, 2020 WL 1452166, at *3 (obligating the party moving for exclusion to demonstrate inadmissibility).

Consequently, the Court DENIES Mr. Romero's motion *in limine* with respect to the evidence of his lewd behavior towards his female colleagues.

    2. <u>Evidence Concerning Mr. Romero's Drug Use</u>

Next, Mr. Romero disputes the relevance of his drug test results and the records of his participation in substance abuse rehabilitation programs. (Doc. # 142 at 5–8.) He argues that this evidence is irrelevant because Altitude neither knew of his "condition" before August 2020 nor formally disciplined him ever. *Id.* at 7 (citing Defendants' assertion in the Final Pretrial Order that Altitude's decision-makers did not know of Mr. Romero's substance abuse habits until he filed this lawsuit). Finally, as with his first argument, Mr. Romero asserts unfair prejudice—without offering any explanation beyond the conclusion itself. *Id.* at 8.

In response, Altitude emphasizes that Mr. Romero's ADA claims rely on a provision of the statute that covers substance abuse disorders unless the abused substance is an illegal drug or a prescription medication being used unlawfully. (Doc. #

7

146 at 6 (first citing 42 U.S.C. § 12114(a), then 29 C.F.R. § 1630.3).)[2] Per Altitude, this evidence is relevant to the threshold inquiry of whether Mr. Romero is a qualified individual under the ADA and whether he engaged in substance abuse behaviors that exempt him from ADA protections. *Id.* Next, Altitude contends that this evidence is relevant for impeachment purposes because Mr. Romero repeatedly testified under oath that his participation in substance abuse rehabilitation programs was due to prescription sleeping medication. (Doc. # 146 at 8 (citing Docs. ## 66-1, 66-2).)

The Court agrees with Altitude—this evidence cuts to the core of Mr. Romero's ADA claims. The ADA's applicability depends on which substances Mr. Romero chose to use, so facts related to those substances are material. The contested evidence is relevant to the issue of whether he was using illegal substances or illegally obtained legal substances. Further, Mr. Romero makes no meaningful effort to argue unfair prejudice. Consequently, Mr. Romero's motion to exclude this evidence is denied. Considering this ruling in conjunction with the ruling on evidence of Mr. Romero's lewd behavior, Mr. Romero's entire motion *in limine* is therefore DENIED.

## C.  Plaintiff's Additional Arguments in his Response to Altitude's Motion *in Limine*

Mr. Romero's Response to Altitude's motion *in limine* raises several issues not raised by Altitude in its motion. Namely, he argues several alternative theories of admissibility for evidence that Altitude claimed was precluded by the previous order on summary judgment. *See* (Doc. # 145 at 6–8.) He asserts that said evidence is relevant:

---

[2] The protections offer a safe harbor for illegal drug users that successfully completed a rehabilitation program and abstained from further illegal drug use, which offers another basis of relevance. 42 U.S.C. § 12114(b)(1).

8

(1) to support his Section 1981 claim because administrative exhaustion does not preclude him from doing so; (2) to support the merits of his Title VII claims because all disputed evidence was administrative exhausted through his EEOC charges' inclusions of several "continuing violations"; and (3) to contextualize his Title VII claims. (Doc. # 145 at 2, 4–6.)[3] These three arguments correspond to no objection made by Altitude considering that Altitude's only basis for exclusion was its misinterpretation of the Court's summary judgment order. For that reason, Altitude has had no chance to respond to these arguments. Mr. Romero's Title VII arguments should have been presented in an affirmative motion, *e.g.*, his motion *in limine*. Civ. Prac. Standard 7.1A(4) ("All requests for the Court to take distinct actions mus be contained in separate, written motions."). Nevertheless, to provide guidance to the parties, the Court will address them.

Beginning with Mr. Romero's Section 1981 argument, Altitude—in prior briefings—objected to the admission of Mr. Romero's October 2023 termination because it was never administratively exhausted. (Docs. ## 131, 134.) However, Section 1981 does not require exhaustion. *See generally Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1514 (10th Cir. 1997) ("[T]he continuing violation theory is a creature of the need to file administrative charges, and . . . a [S]ection 1981 claim does not require filing such charges before a judicial action may be brought."); *Porter v. Nussle*, 534 U.S. 516, 523 (2002) (noting that a Section 1983 plaintiff need not exhaust administrative

---

[3] The one exception is the 2016 contract, as detailed in the Court's order on summary judgment. (Doc. # 129 at 13–14.)

remedies unless said plaintiff is a state prisoner). The Court notes that during the parties' February 28, 2024 Final Trial Preparation Conference, the Court agreed with Plaintiff that administrative exhaustion does not apply to Section 1981 claims. (Doc. # 143.) Therefore, evidence of his termination will be admissible but applicable to his Section 1981 claim only. The parties are advised to jointly prepare a limiting instruction to that effect.

As for Mr. Romero's Title VII "continuing violation theory" argument, the Court notes that Mr. Romero cites legal authorities exclusively discussing allegations of a hostile work environment to support his use of a continuing violation theory in proving the merits of his Title VII discrimination and retaliation claims. The Court's own research shows that an individual Title VII plaintiff can only use a continuing violation theory under a hostile work environment theory of discrimination. *Nat'l R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 122 (2002); *but see Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 632 (10th Cir. 2012) ("[O]nly the U.S. Attorney General or a certified class" can bring a pattern-or-practice claim.); *accord* 42 U.S.C. § 2000e-6(a). A hostile work environment claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117 (citing 42 U.S.C. § 2000e-5(e)(1)). So long as an act contributes to the hostile work environment claim and at least one of those acts occurred within Title VII's filing period, the entire series of interlocking events can be introduced as evidence to prove liability. *Id.*

Nowhere in the Final Pretrial Order does Mr. Romero characterize his Title VII claims as involving, even in part, a hostile work environment theory. *See generally* (Doc.

# 120.) The parties' proposed jury instructions fail to include an instruction based on hostile work environment claims under Title VII. The Court will not allow Mr. Romero to quietly import a new theory of proving discrimination at this late point in the litigation.

Likewise, because Mr. Romero does not articulate a hostile work environment theory of discrimination, his Title VII "background evidence" argument fails. *See* (Doc. # 145 at 5–6.) Although Title VII jurisprudence permits the introduction of unlawful but untimely "prior acts as background evidence in support of a timely claim," *Morgan*, 536 U.S. at 113, the background evidence is relevant where "the status of a current practice is at issue." *Jackson v. Potter*, Civ. No. 06-cv-01881, 2008 WL 1930618, at *2 n.2 (D. Colo. May 1, 2008) (quotation omitted). The Final Pretrial Order indicates that Mr. Romero is not alleging a "current practice." Quite the opposite—his theory of his case is that he alone was singled out among his peers due to his immutable traits and his substance abuse disorder. Because the contextual facts that he seeks to introduce are untimely, the "discriminatory act [that] is not made the basis for a timely charge" becomes "merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977).

In sum, none of Mr. Romero's three improperly presented arguments persuade the Court to expand his claims to implicate facts that would otherwise offer no probative value to the theories of discrimination that he elected to pursue.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that:

- Plaintiff's motion *in limine* (Doc. # 142) is DENIED.

- Defendants' motion *in limine* (Doc. # 140) is DENIED.

DATED: March 6, 2024

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge